UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALMA SHEARD,

    Plaintiff                                                          Civil Action No. 05-71605

v.                                                                  HON.  MARIANNE O. BATTANI
                                                                       U.S. District Judge
                                                                       HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Alma Sheard brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income (SSI) under the Social Security Act (Tr. 43-45). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

      On October 2, 2001, Plaintiff filed an application for SSI benefits, alleging an onset of disability date of November 15, 1991 (Tr. 43-45). After denial of her initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on July 9, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) John L. Christensen. Plaintiff,

represented by attorney Michael Lupisella, testified. (Tr. 152-162). Timothy Shaner, acting as Vocational Expert (VE), also testified (Tr. 162-166). On March 12, 2004, ALJ Christensen found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform a significant number of jobs in the national economy (Tr. 22). On March 11, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on April 25, 2005.

## BACKGROUND FACTS

Plaintiff, born December 28, 1968, was age 35 when the ALJ issued his decision (Tr. 43). She completed twelfth grade and worked previously as a cook and cashier (Tr. 54, 59) Plaintiff alleges an onset date of November 15, 1991due to complications from a thyroid imbalance (Tr. 53).

### A.     Plaintiff's Testimony

Plaintiff, unmarried, testified that she lived in Saginaw, Michigan with her father and her three young children (Tr. 152-153). She stated that she stood 5' 2" and weighed approximately 145 pounds, adding that her weight fluctuated up to 20 pounds downward as a result of her thyroid condition (Tr. 153). Plaintiff reported that she had refrained from ever acquiring a driver's license due to her concerns that her leg problems would prevent her from driving safely (Tr. 154). She testified that she graduated from high school but had not received further training or served in the armed forces (Tr. 154).

Plaintiff, right-handed, reported that she had last worked in 2001 as a grocery store cashier until leg pains obliged her to quit (Tr. 154, 155). She indicated that prior to her

grocery store position, she performed similar work at a fast-food restaurant (Tr. 156). She opined that left leg pain prevented her from performing her former jobs which required her to remain standing for a substantial portion of her shift (Tr. 156). She reported that leg pain distracted her at work to the extent that she could not perform her job properly (Tr. 157). She deemed herself also unable to hold jobs which were performed sitting, stating that either sitting or standing for extended periods caused discomfort (Tr. 157). She testified that she had received a prescription for pain medication, which she stopped using after experiencing nausea and dizziness (Tr. 157). She indicated that her thyroid medication helped her condition sporadically, reporting that the combination of leg pain and thyroid problems created stress (Tr. 158).

Plaintiff testified that she began taking medication for Graves disease in 2001 at the time Family Independence Agency (FIA) began paying for her medical care (Tr. 158). She indicated that she was currently able to care for only a portion of her personal needs, testifying that she received assistance getting in out of the bathtub from her sister (Tr. 159). She denied any outside activities, adding that her condition prevented her from attending her children's school events, grocery shopping, and doing yard work (Tr. 159). She reported difficulty sleeping at night, adding that medication and fatigue obliged her to nap three times each day for between two and three hours (Tr. 160). She estimated that she could not stand for more than twenty minutes, sit for more than ten, or walk for more than ten to fifteen minutes (Tr. 161). She denied using a cane or walker, stating that she supported herself by leaning on furniture when going from one place to another, avoiding climbing or descending

stairs (Tr. 161). She stated that she could lift only ten pounds, and was unable to bend (Tr. 162). She spent most of her waking hours with her left leg elevated by a pillow (Tr. 162).

### B.     Medical Evidence

In August, 2001, Plaintiff sought emergency care for hyperthyroidism and Graves disease, reporting that she experienced weakness, forgetfulness, and occasional shortness of breath and chest pains (Tr. 85). Exam notes state that she also had a history of venous insufficiency in her left foot (Tr. 85). Plaintiff, presently uninsured, indicated that she was supposed to be taking PTU and Inderal for hyperthyroidism, but was taking neither medication currently (Tr. 85, 144). Brian Purchase, D.O. wrote prescriptions for both PTU and Inderal (Tr. 86). In September, 2001, Plaintiff obtained prescription coverage and resumed treatment (Tr. 143). Notes from an examination the next month showed that Plaintiff's condition had worsened (Tr. 141). However, July, 2002 examination notes indicate that by January, 2002, thyroid function studies showed normal results (Tr. 140). The same notes show that Plaintiff continued to complain of left leg pain, apparently attributable to prior surgery which created difficulty in venous circulation (Tr. 138). Phillip W. Lambert, M.D. noted that an orthopedic consultant concluded that surgery would not benefit her condition (Tr. 138 *citing* Tr.133). He recommended that she avoid prolonged standing, advising her to keep her foot elevated intermittently when required to stand for long periods (Tr. 138).

In November, 2001, Edward Tava, ED. D., performed a mental status evaluation of Plaintiff on behalf of Disability Determination Services (DDS) (Tr. 88). Plaintiff denied any

mental health treatment (Tr. 88). She opined that since ceasing work in June, 2001 she could no longer perform gainful employment (Tr. 89). She stated that she enjoyed good relationships with her family, but complained of memory problems, complications from hyperthyroidism, shortness of breath, and depression (Tr. 89). Tava concluded that Plainitiff exhibited appropriate contact with reality, but poor self-esteem (Tr. 90). Tava noted that she appeared to possess adequate intelligence, and was "extremely talkative" (Tr. 90). He assigned Plaintiff a GAF of 52, concluding that her prognosis was "guarded" (Tr. 93)[1]. However, he found that she retained the ability to manage her own funds (Tr. 93). The same month, Ronald Marshall, Ph.D. performed a Mental Residual Functional Capacity Assessment based on Plaintiff's medical records (Tr. 97-99). He concluded that she did not experience significant limitations, with the exception of moderate deficiencies in her ability to carry out detailed instructions as well as maintaining attention and concentration for extended periods (Tr. 97). Dr. Marshall noted that Plaintiff's medical history did not include hospitalization or counseling for mental health problems (Tr. 96). A Psychiatric Review Technique conducted at the same time by Dr. Marshall concluded that Plaintiff experienced affective and anxiety-related disorders (Tr. 104-106). He found that she suffered from moderate difficulties in maintaining concentration, persistence, or pace, finding further that other possible functional limitations were either mild or non-existent (Tr. 111).

---

[1] A GAF score of 51- 60 indicates "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning . . . ." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th Ed. 1994)(*DSM-IV*).

In February, 2002, L. D. Hendricks, D.O. examined Plaintiff on behalf of Disability Determination Services (Tr. 115). Plaintiff maintained that her left leg problems prevented her from working, reporting chronic pain (Tr. 115). Dr. Hendricks noted that Plaintiff wore a support stocking but currently took no pain medication (Tr. 115). He found that she experienced a reduced range of motion of the lumbar spine and left leg as well as an inability to squat (Tr. 116). Plaintiff's examination yielded otherwise normal results (Tr. 116). A Physical Residual Functional Capacity Assessment performed the same month found that she retained the ability to lift twenty pounds occasionally and ten pounds frequently, along with the ability to stand for two hours and sit for about six hours in an eight-hour workday (Tr. 121). The same report found that Plaintiff's ability to push and pull with the lower extremities was limited due to left leg numbness and pain and was further limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 121-122). The report concluded that Plaintiff's allegations of disability due to hyperthyroidism were not consistent with her medical records which indicated that her condition had stabilized (Tr. 125).

### C.    Vocational Expert Testimony

VE Timothy Shaner placed Plaintiff's former work at the light level of exertion, classifying her jobs as a cashier and fast food worker as unskilled (Tr. 84). The ALJ posed the following question to the VE:

> "I want you to assume that we have an individual of the same age, education, and work experience as the Claimant. That individual has the following residual functional capacity. That would be to do light work with no

>continuous repetitive use of the left lower extremity for pushing and pulling, including the use of foot controls. No climbing ropes, ladders, or scaffolds. Only occasional nonrepetitive balancing, climbing ramps or stairs. Only occasional nonrepetitive stooping, kneeling, crouching, or crawling. Can do simple routine tasks in a low stress environment. By that I mean minimal changes in a work place setting. Given those limitations, is there work an individual can perform and if so, please tell me what that work would be along with the occupational title, and the number of jobs available in the [State of Michigan] ?"

(Tr. 164). The VE stated that given the above limitations, Plaintiff could perform the work of an inspector (13,000 jobs), usher (1,400 jobs), and packager (6,600 jobs) at the light exertional level, as well as cashier (17,000 jobs), inspector (1,800 jobs), and assembler (13,000) at the sedentary level of exertion (Tr. 165). The VE testified that his conclusions were consistent with the information found in the Dictionary of Occupational Titles (DOT) (Tr. 165). In response to further questioning, the VE testified that if the hypothetical individual described above was also limited by pain, pain medication, and fatigue secondary for loss of sleep because of pain to the extent "that the same individual could not sustain sufficient concentration, persistence, and pace to do even simple routine tasks on a regular and continued basis," such an individual would be precluded from all employment (Tr. 165).

## D.     The ALJ's Decision

Based on Plaintiff's October 2, 2001 application, ALJ Christensen held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 21, 22). Citing Plaintiff's medical records, he found that Plaintiff experienced thyroid problems, left leg pain, and anxiety coupled with depression (Tr. 18). The ALJ held that these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found that

they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4, noting that "the intensity, persistence and functionally limiting effects of her symptoms are not substantiated by the objective medical or other evidence." (Tr. 18, 20).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to perform

> "Simple, routine, no stress light level of work with no continuous repetitive use of the lower left extremity for pushing or pulling, no use of foot controls, no climbing ropes, ladder, scaffolds, and only occasional use of non-repetitive balancing, climbing ramps, stairs, stooping, kneeling, or crouching"

(Tr. 22).

He concluded that although Plaintiff's non-exertional limitations prevented her from performing a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, citing work as an inspector (13,000 jobs), usher (1,400 jobs), and packager (6,600 jobs) at the light exertional level as well as the jobs of cashier (17,000 jobs), inspector (1,800 jobs), and assembler (13,000 jobs) at the sedentary exertional level (Tr. 22).

The ALJ found Plaintiff's allegations of limitations "not wholly credible," citing the absence of more aggressive treatment (Tr. 20). He noted that a Psychiatric Review Technique completed in November, 2001 showed that Plaintiff did not experience more than mild limitations in daily living or social functioning, and moderate deficiencies in concentration, persistence, or pace (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Vocational Expert Testimony

Plaintiff argues that remand is appropriate because the hypothetical question posed to the VE did not include limitations reflecting her moderate limitations in concentration, persistence, and pace which the ALJ adopted from the Psychiatric Review Technique performed in November, 2001 (Tr. 19, 111). *Plaintiff's Brief* at 7-17. Citing *Varley v. Secretary of Health and Human Services,* 820 F.2d 777 (6th Cir. 1987), Plaintiff asserts that the hypothetical question's non-exertional limitations

of "simple routine tasks" and a "low stress environment" did not accurately portray her impairments; thus, the VE's job findings, adopted by the ALJ, cannot constitute substantial evidence. *Brief* at 7.

Pursuant to *Varley, supra,* 820 F.2d at 779, a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), the court rejected the proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632; quoting *Varley*, supra, 820 F.2d at 779. Generally, a failure to account for pacing deficiencies constitutes reversible error. In *Bankston v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." Likewise, "moderate" deficiencies, which also mark the midpoint of a five-point scale, suggest substantial limitations which should be acknowledged in the hypothetical question. The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies in pace. *See, e.g.*, *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel*, 1999 WL

-11-

426035, 15 (D. Or. 1999). Nor does the qualifier "low stress" effectively "capture the concrete consequences" of Plaintiff's limitations in pace. *Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir. 1996). Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

In the present case, the ALJ's hypothetical question, as posed, cannot form a basis for remand. First, Plaintiff's argument that her pacing deficiencies should have been listed in the hypothetical stands at odds with this Circuit's findings. In *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001) the court rejected the argument that the ALJ must adhere to talismanic language in hypothetical questions to avoid remand. Likewise, as discussed above, although neither "simple routine tasks" nor "a low stress environment," considered piecemeal, account for Plaintiff's pacing deficiencies, these limitations, along with the condition that she must work in a atmosphere with "minimal changes" may be read cumulatively to encompass her non-exertional limitations (Tr. 164). *See Smith, supra* 307 F.3d at 379, ("[T]he ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of [the plaintiff's] . . . impairment.").[2]

Next, even assuming that the ALJ's question inadequately accounted for Plaintiff's pacing deficiencies, any error was rendered harmless by the VE's job

---

[2]The *Smith* hypothetical limitations actually included a restriction against quotas along limiting the stress level and complexity of the work. However, as discussed *infra*, even if ALJ Christensen slipped up by omitting a prohibition on quotas, such an error is harmless.

findings which included 16,200 positions which do not require production work.[3] Although the Sixth Circuit has recognized that it is "impossible to set forth one special number as the boundary between a 'significant number' and an insignificant number of jobs," the court found has that as few as 1,350-1,800 jobs in the local economy constituted a significant number. *Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir. 1990), *citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988). The ALJ's finding that 16,200 non-production jobs existed in the regional economy (and presumably half as many in the local economy) constitutes a "significant number" of jobs by even the most liberal standards.

Finally, I note that Plaintiff, age 35 at the time of the administrative decision, has not made a particularly strong case for benefits. Her sole argument for remand stands on alleged deficiencies in the hypothetical question. If this Court were to remand her case for rehearing, at best, she could expect a re-crafted hypothetical question better articulating her non-exertional limitations. *See Flowers v. Chater,* 107 F.3d 873, 1997 WL 58763, 4 (7th Cir.(Ill. (6th Cir. 1997) (holding that an imperfect hypothetical question was harmless error because a portion of the VE's job findings, independently amounting to a "substantial number," would remain the same if the hypothetical were remanded for correction). Even if the Court had found

---

[3]Out of the 52,800 jobs cited by the VE, the light exertional work of an inspector (13,000 jobs) and usher (1,400 jobs), as well as 1,800 inspection jobs at the sedentary level do not require production quotas.

internal inconsistencies between the question posed to the VE and the ALJ's opinion, the record as a whole points overwhelmingly to a finding of non-disability. "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir. 2004); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion). As discussed, pursuant to *Smith, supra*, if the question were to include a prohibition on production work, Plaintiff would nonetheless be found to retain the ability to perform over 10,000 jobs in the regional economy.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v.*

*Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 13, 2006.

                                              s/Susan Jefferson
                                              Case Manager